IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER PARAHAM          :          CIVIL ACTION
                            :
         v.                 :
                            :
LCT OPCO LLC                :          NO. 24-3148

MEMORANDUM

Bartle, J.                                    October 15, 2025

In July of 2024, plaintiff Christopher Paraham filed against defendant, La Colombe Holdings, Inc., a collective action under the Fair Labor Standards Act (29 U.S.C. §§ 201, et seq.) ("FLSA"), and a putative class action under the Pennsylvania Minimum Wage Act (43 P.S. § 333.101 et seq.), and the Pennsylvania Wage Payment and Collection Law (43 P.S. § 260.1 et seq.).  On November 6, 2024, plaintiff amended his complaint by substituting LCT OpCo LLC as the defendant.

Defendant LCT OpCo LLC operates as La Colombe.  It manufactures and sells coffee and related products.  It owns and operates coffee shops in California, Illinois, Massachusetts, New York, Pennsylvania, Texas, and Washington, D.C.[1]  Plaintiff asserts that defendant violated federal and state laws by failing to pay hourly workers for all hours worked, including

_____

1.    Former defendant La Colombe Holdings Inc.'s assets and liabilities were transferred to defendant LCT OpCo LLC pursuant to a written agreement.  Pursuant to that agreement, LCT OpCo LLC has operated as La Colombe and employed hourly-paid production workers since December 15, 2023.

unpaid pre-shift activities and post-shift work, and by miscalculating the regular rate of pay for overtime.

Before the court is the joint motion of plaintiff and defendant for final approval of the settlement of collective action and class action (Doc. # 36). The settlement fund provides a maximum pay out $450,000. Out of this fund, plaintiff seeks to compensate class members, and pay attorneys' fees, litigation and administrative expenses. He also requests a service fee.

I

After the parties engaged in extensive investigation and analysis of payroll and timekeeping records and exchanged preliminary discovery, the parties participated in a successful mediation with Dina R. Jansenson, Esq. As a result, the parties executed a settlement agreement on June 4, 2025 and moved for preliminary approval of the settlement that same day.

On June 9, 2025, this court granted preliminary approval. The court ordered that defendant provide the settlement administrator within thirty days with the contact and payroll information for all employees who met the class action or collective action requirements. The settlement administrator was also required to disseminate notice of the collective and class action settlement to those persons within fourteen days of receiving the contact information.

-2-

The settlement provides for compensation to two groups.  The FLSA collective consists of "all persons employed by Defendant or its predecessor, La Colombe TorrefactionInc., as hourly-paid production workers in Pennsylvania or Michigan at any time between July 18, 2021, and October 13, 2024."  The Rule 23 class encompasses hourly production workers in Pennsylvania during the same period.  Accordingly, Pennsylvania workers are included in both the FLSA collective and the Rule 23 class. Workers in Michigan are only eligible for the FLSA collective. There are 850 FLSA collective members,[2] of whom 260 individuals are also members of the Rule 23 class.

Under the settlement agreement, members of the FLSA collective must submit a valid and timely claim form to receive a payment.  The form will serve as their opt-in consent. Members of the Rule 23 state law class who have not opted out will receive automatic payments.  Payments to class and collective members are allocated based on factors including the number of workweeks, pay rate, additional compensation received, and location, and are intended to reflect each member's potential recovery under the claims asserted.

---

2.    The joint motion for final approval (Doc. # 36) states that there are only 850 FLSA collective members.  However, the accompanying affidavit of the settlement administrator lists 851 members.  Because the most recent affidavit lists 850 members and thus matches the motion, the court concluded that there are 850 members.

The settlement agreement, as noted, provides for a maximum payment from defendants of $450,000, which includes distributions to collective and class members as well as attorneys' fees ($150,000), litigation costs ($6,000), settlement administration expenses ($19,000), and the named plaintiff's service award ($10,000).  The settlement covers the period from July 18, 2021 through October 13, 2024.  After subtracting those costs, the amount to be available to collective and class members is $265,000.  This figure represents roughly 72% of collective and class members' estimated unpaid wages.  The net settlement amount allocates 67.22% to the FLSA collective and 32.78% to the Rule 23 class.  Unclaimed FLSA collective funds will revert to the defendant.  Unredeemed class funds will be distributed to Philabundance, a nonprofit organization selected by the parties as the cy pres beneficiary.

After the court's June 9, 2025 order, eligible Pennsylvania employees were notified of their state law claims and FLSA claims.  They were also informed of their respective rights to opt out of the state law class action and to opt in to the FLSA collective action.  There was a separate notice for those who are a part of the FLSA collective settlement only, namely the Michigan employees.  They were informed of their rights to opt into the collective action.

Settlement administrator Madely Nava, a case manager of Apex Class Action, LLC, estimates that its notice program reached approximately 97.9% of collective and class members. As of September 15, 2025, it has received 244 claim forms from the FLSA Collective Members (a claim rate of 28.7%). Apex Class Action has not received any requests for exclusion or any objections. The deadline for exclusion requests and objections was August 29, 2025. Of those 244 claimants, eighty-three are also members of the Rule 23 class. Nava estimates defendant stands to pay a total of $152,563.62 from the settlement fund to participating collective and class members. Specifically, the 244 participating collective members stand to receive $65,703.64 and the 260 participating class members stand to receive $86,859.98. Per-person payments average $179.49.

Because the settlement agreement includes both a class action settlement and a FLSA collective settlement, the court will address each under its appropriate legal standards.

## II

To approve a proposed FLSA collective settlement, the court must determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting Lynn's Food

Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (internal quotation marks omitted)).  If the court determines that the settlement resolves a "bona fide" dispute, the court must engage in a two-part fairness inquiry: first, whether the settlement is fair and reasonable to the employees, and second, "whether the agreement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *2 (E.D. Pa. Aug. 24, 2015).

A "bona fide" dispute exists when there is evidence that the defendant has an intent to reject plaintiffs' claim when it is presented, and that such claim falls within the ambit of the FLSA.  Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016).  There can be no doubt that such a dispute exists here.

Final certification of a collective action under the FLSA requires that the plaintiffs be "similarly situated." Matthews v. Philadelphia Corp. for Aging, No. 22-4632, 2025 WL 992198, at *3 (E.D. Pa. Apr. 1, 2025) (quoting Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 536-37 (3d Cir. 2012)). The non-exhaustive relevant factors the court considers include whether plaintiffs share the same job title, performed similar duties, and advance similar legal claims.  Id.  "[C]ertification under the FLSA is less stringent than certification of a Rule 23

class." Id. (citing Hall v. Accolade, Inc., No. 17-3423, 2020 WL 1477688, at *7 (E.D. Pa. Mar. 25, 2020)).

The plaintiff and collective members were all hourly-paid production workers employed in defendant's Pennsylvania or Michigan production facilities. They all had similarly hourly pay structures and circumstances of employment. They all advance claims that defendant miscalculated the regular rate of overtime pay and thus seek the same form of relief of unpaid wages, liquidated damages and statutory penalties. The court finds that plaintiff and the other 850 collective members are similarly situated.

The court must also determine whether the proposed settlement is "fair and reasonable" to the employees. In FLSA collective actions, district courts in this Circuit typically apply the nine-factor test outlined in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), to assess the fairness and reasonableness of any proposed settlement. See, e.g., Altnor, 197 F. Supp. 3d at 764; Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). Because the same Girsh factors are used to determine whether a Rule 23 class settlement is reasonable, see, e.g., Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 524 n.3 (E.D. Pa. 2016), the court will address the Girsh factors hereafter for both the FLSA collective and Rule 23 class together.

Even if the settlement is otherwise fair and reasonable, the court must also decide whether the settlement would impermissibly frustrate the implementation of the FLSA in the workplace.  Courts must take into account whether the proposed settlement contains overly broad waiver or release provisions, a confidentiality agreement, or any attempt by the parties to keep the agreement private.  Mejia v. KVK-Tech, Inc., No. 19-4841, 2020 WL 5292074, at *3 (E.D. Pa. Sept. 4, 2020).  The agreement, which was publicly filed, does not contain a confidentiality agreement.

Finally, the court must review any waiver or release provision of the settlement agreement.  A waiver provision is overbroad when it is prospective or requires that plaintiffs release unrelated claims.  See, e.g., Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 532-33 (E.D. Pa. 2016).  While the settlement agreement does contain a waiver provision, collective members here will simply waive any wage and hour and related claims that would have arisen based on the facts of the lawsuit up through the date of final approval.  The release provision here is narrowly drawn and is fair.

III

The court now turns to the review of the Rule 23 class action settlement of claims under the Pennsylvania Minimum Wage Act (43 P.S. § 333.101 et seq.), and the Pennsylvania Wage

-8-

Payment and Collection Law (43 P.S. § 260.1 et seq.).
Plaintiff, as noted previously, seeks final approval of the
class composed of "all persons employed by Defendant or its
predecessor, La Colombe Torrefaction Inc., as hourly-paid
production workers in Pennsylvania at any time from July 18,
2021 through October 13, 2024." Settlement Agreement ¶ FF.  A
court may not grant final approval of a settlement unless the
class meets all prerequisites of Rule 23.  See In re General
Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55
F.3d 768, 797 (3d Cir. 1995).

First, any class must satisfy the following
requirements of Rule 23(a): numerosity, commonality, typicality,
and adequacy of representation.  Numerosity is typically
satisfied when a class exceeds forty members.  See in re
Processed Egg Prod. Antitrust Litig., 284 F.R.D. 249, 260 (E.D.
Pa. 2012).  As there are 260 class members, this class meets the
numerosity requirements.

There are common questions of law and fact that must
be answered regarding the class.  Significantly, to establish
liability a factfinder must determine whether defendant failed
to pay for the class's pre-shift "walking time" and
miscalculated the regular rate of overtime pay.

The inquiries of typicality and adequacy "tend to
merge" because they both consider potential conflicts and

whether the claim of the named plaintiff is so interrelated to the claim of the class such that the class can be fairly and adequately protected. Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006). The claims of the named plaintiff are typical of the class. Like the class members, he worked for defendant as an hourly-paid production worker and was subject to the same pay and timekeeping policies. Finally, he and class counsel adequately represent the class. There is no apparent conflict between the named plaintiff and the absent class members. See, e.g., In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999). Class counsel also negotiated this settlement agreement with years of experience with class actions under federal and state wage laws. In sum, the court finds that the class satisfies the prerequisites set forth in Rule 23(a).

Next, the court must decide whether the class may be certified under Rule 23(b)(3) for money damages. It allows for certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this finding, the court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

-10-

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Id.  This rule requires that potential class members be notified of the pending litigation and provided an opportunity to opt-out from the class.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011).

Predominance "asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact."  Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 370 (3d Cir. 2015).  The presence of individual questions does not bar a finding of predominance, but such individualized issues cannot "overwhelm" common ones.  Id. at 371.  Questions as to whether defendant properly calculated the regular rate of pay for overtime and whether pre-shift "walking time" is compensable under the applicable statute can be answered in the aggregate.  Individualized questions of injury do not predominate over these common liability questions.  Thus, the requirement of predominance is satisfied.

Certification pursuant to Rule 23(b)(3) is appropriate if a "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Litigating these cases individually would not be feasible.  Each

class member has suffered relatively small damages, and the cost of litigating the individual claim would not be worth it. Proceeding as a class action permits class members with smaller claims to vindicate their rights.

The settlement also has a proper notice procedure. Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Hall v. Accolade, Inc., No. 17-3423, 2020 WL 1477688, at *7 (E.D. Pa. Mar. 25, 2020).  Rule 23(e) requires all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e). The notice to members includes a description of the lawsuit, a summary of the terms of the settlement, and a synopsis of each member's legal rights and options.   The court finds this notice procedure has been followed.

IV

Finally, the court must determine for both the FLSA collective action and the Rule 23(b) class whether the settlement is fair.  Fed. R. Civ. P. 23(e)(2); Altnor, 197 F. Supp. 3d at 763.

Our Court of Appeals has identified nine factors to guide the lower courts in approving proposed class and collective action settlements.  See Girsh v. Jepson, 521 F.2d

153, 157 (3d Cir. 1975); see also Altnor, 197 F. Supp. 3d at

764.  Those factors are:

> (1) The complexity, expense, and likely
> duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the
> stage of the proceedings and the amount of
> discovery completed; (4) the risks of
> establishing liability; (5) the risks of
> establishing damages; (6) the risks of
> maintaining the class action through the
> trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range
> of reasonableness of the settlement fund in
> light of the best possible recovery; and (9)
> the range of reasonableness of the
> settlement fund to a possible recovery in
> light of all the attendant risks of
> litigation.

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534-35 (3d

Cir. 2004) (citing Girsh, 521 F.2d at 156-57).  The court should

presume that a settlement was fair if it makes a preliminary

finding that (1) the settlement was developed as a result of

arms' length negotiations; (2) there was sufficient discovery in

the litigation; (3) proponents of the settlement are experienced

in similar litigation; and (4) only a small fraction of the

class objected.  In re Cendant Corp. Litig., 264 F.3d 201, 232

n.18 (3d Cir. 2001).

The law favors settlement in complex cases where

substantial judicial resources can be conserved by avoiding

formal litigation.  See In re General Motors Corp. Pick-Up Truck

Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).

A settlement in this FLSA collective action and Rule 23 class

action would conserves such resources, avoids further expenses
of litigation, and resolves a dispute that could otherwise
linger for years.  See id.

The parties engaged in a full-day mediation session
with Dina R. Jansenson, Esq., a mediator with experience in
wage-and-hour disputes.  The involvement of a neutral mediator
demonstrates that these negotiations were conducted at arm's
length.  See Utah Ret. Sys. v. Healthcare Servs. Grp., No. 19-
1227, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022).  Lead
counsel has extensive experience in the field.  The parties
entered the mediation after comprehensive written submissions
that outlined the parties' respective positions, damages
estimates, and legal arguments.  No one has objected to or
disputed the settlement.  Accordingly, the court presumes that
the settlement is reasonable.

Regardless of this presumption, the court will
nevertheless evaluate the settlement in light of the factors
enunciated by our Court of Appeals in Girsh as applied to both a
FLSA collective and a class action.

The first Girsh factor is the complexity, expense, and
likely duration of the litigation.  If the court does not
approve the settlement, the court would need to resolve what the
parties agree would be contested FLSA collective and Rule 23
class certification motions.  The parties would likely need to

litigate the scope of what constitutes "representative" evidence for presentation at trial.  Additionally, the parties have stated the trial would "certainly last several days."  Joint Motion for Final Approval at 4, <u>Paraham v. La Colombe Holdings, Inc.</u>, Civ. A. No. 24-3148 (E.D. Pa. June 4, 2025) (Doc. # 36). This factor weighs in favor of settlement.

The second <u>Girsh</u> factor is the "reaction of the class to the settlement."  A collective FLSA settlement requires that absent employees or former employees opt into the settlement. The objections process of Rule 23 is not applicable.  There have been no objections to the Rule 23(b)(3) class.  Generally, "silence constitutes tacit consent to the agreement." <u>Schwartz v. Avis Rent a Car Sys.</u>, 2016 WL 3457160, at *7 (D.N.J. June 21, 2016) (quoting <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 812 (3d Cir. 1995)).  Neither has there been any exclusion requests or disputes.  Accordingly, the lack of any objection supports approval of the settlement.

The third <u>Girsh</u> factor which the court must evaluate is the stage of the proceedings and the amount of discovery completed.  The court must "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." <u>Warfarin</u>, 391 F.3d at 537 (quoting <u>Cendant</u>, 264 F.3d at 235).  Counsel for plaintiff and for defendant engaged in extensive investigation and analysis of payroll and

timekeeping records before negotiating.  Negotiations began

following preliminary exchanges of information.  While

negotiation began early in the process, this factor, under the

circumstances, does not weigh against approval of the

settlement.

        The fourth, fifth, and sixth Girsh factors require the

court to weigh the potential risks that plaintiff would confront

in establishing liability, establishing damages, and maintaining

their litigation through trial.  Defendant at all times has

denied liability and would also oppose certification of claims

on a class and collective basis.  Accordingly, the named

plaintiff would face additional hurdles in obtaining FLSA

collective and class certifications.  If the collective or the

class is not certified, each member runs the risk of needing to

litigate his or her claims as individual actions and thus

multiply the litigation's time and expense. Even assuming

plaintiff achieved a certification, it is always possible it

will be decertified.  See Warfarin, 391 F.3d at 537.  Similarly,

to prove damages, the named plaintiff would have to prove the

number of hours each opt-in FLSA collective member and Rule 23

class member worked each week during his or her employment.

These factors weigh in favor of settlement.

        The seventh Girsh factor directs the court to consider

"whether the defendants could withstand a judgment for an amount

significantly greater" than the settlement reached.  Cendant,
264 F.3d at 240.  The risk of non-payment is neutral in the
settlement analysis.

        The final two Girsh factors are the range of
reasonableness of the settlement in light of both the best
possible recovery and the attendant risks of litigation.  These
factors require the court to consider whether the settlement
"represents a good value for a weak case or a poor value for a
strong case."  The total settlement fund, inclusive of member
pay-outs, attorneys' fees and other costs ($450,000), represents
approximately 122% of the estimated total damages that could
have been recovered if plaintiff and the class and collective
members fully prevailed at trial.  The settlement amount
available to pay to collective and class members represents
approximately 72% of their estimated unpaid wages.  However, the
settlement administrator estimates defendant stands to pay only
$152,563.62 from the net settlement fund to them.  This amounts
to only 41% of their estimated wages.  Nevertheless, wage-and-
hour settlements in this district have previously been approved
where class or collective members receive similar percentages of
claim wages.  See Lunemann v. Kooma III LLC, No. 23-3704, 2024
WL 3744359, at *10 (E.D. Pa. Aug. 8, 2024) (collecting cases).
And, as stated previously, proceeding to trial, or otherwise

continuing to litigate this case, poses significant risks. These two factors counsel toward approval of the settlement.

Accordingly, the court finds that both the class components and the collective action components of the settlement are fair, reasonable, and adequate.

V

Lead plaintiff also seeks the appointment of Brown, LLC as class counsel.  The court previously appointed this firm on an interim basis pursuant to Rule 23(g)(3) when the settlement was preliminarily approved.

Rule 23(g)(1) requires a formal appointment of class counsel.  The rule describes four factors that must be considered when doing so:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [and] (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g).  The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  <u>Id.</u>  The court previously found class counsel's representation to be adequate. Class counsel negotiated this settlement agreement with years of

experience with class actions under federal and state wage laws. Additionally, class counsel has expended more than 203 hours investigating plaintiff's claims, reviewing and analyzing defendant's payroll and timekeeping data, preparing damages analyses, and participating in a full-day mediation before an experienced wage-and-hour mediator.

The court confirms the appointment of Brown, LLC as Class Counsel.

VI

Plaintiff also seeks approval of fees for lead counsel in the amount of $150,000, that is 33.33% of the settlement fund.

After a class is certified under Rule 23, the court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Both the Supreme Court and our Court of Appeals favor calculation of attorney's fees as a percentage of class recovery. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478-79 (1980); In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006).

The FLSA states that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In wage and hour cases such as this, district courts in our circuit use the percentage-

of-recovery method and award a fixed portion of the settlement
fund to counsel.  See, e.g., Mejia, 2020 WL 5292074, at *4.

Lead plaintiff seeks approval of fees for lead counsel
that was calculated via the percentage-of-recovery method.
Accordingly, this fee will be approved if deemed reasonable.

In determining the reasonableness of a proposed award
for counsel in collective action and class action settlements
such as this, our Court of Appeals has stated that a district
court should consider the following seven so-called Gunter
factors:

> (1) the size of the fund created and the
> number of beneficiaries, (2) the presence or
> absence of substantial objections by members
> of the class to the settlement terms and/or
> fees requested by counsel, (3) the skill and
> efficiency of the attorneys involved, (4)
> the complexity and duration of the
> litigation, (5) the risk of nonpayment, (6)
> the amount of time devoted to the case by
> plaintiffs' counsel, and (7) the awards in
> similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir.
2000) (citing In re Prudential Ins. Co. of Am. Sales Pracs.
Litig. Agent Actions, 148 F.3d 283, 336-40 (3d Cir. 1997)).

First, the court will take into account the size of
the fund created and the number of beneficiaries.  Lead
plaintiff achieved a cash settlement of $450,000, which will
benefit 260 class members and another 161 collective class
members.  The total settlement fund represents approximately

122% of the estimated total damages and yielding net payments equal to about 72% of alleged unpaid wages. Class counsel has achieved a recovery per member similar to other recently approved settlements in wage and hour collective and class actions. See Lunemann v. Kooma III LLC, No. 23-3704, 2024 WL 3744359, at *2 (E.D. Pa. Aug. 8, 2024); see also Wood v. Saroj & Manju Invs. Philadelphia LLC, No. 19-2820, 2021 WL 1945809, at *11 (E.D. Pa. May 14, 2021). This factor supports the approval of the fee.

There have been no objections to the settlement. Nor have there been any requests for exclusion. Thus, the reaction of the members, the second Gunter factor, weighs in favor of approval of the attorneys' fee requested.

The third Gunter factor is the skill and efficiency of the attorneys involved. As discussed previously, Brown, LLC has successfully litigated numerous class and collective actions under FLSA and state wage laws nationwide. This factor weighs in favor of approval of the fee request.

The fourth Gunter factor is the complexity and duration of the litigation. Negotiations began following preliminary exchanges of information. The parties reached a settlement before any dispositive motions were filed to challenge the case's basis. Additionally, the case does not appear to have been unusually or especially complicated, either

factually or legally, when compared to other class and collective actions.  See Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016).  This factor weighs against the fee request.

The court, pursuant to the fifth Gunter factor, considers the risk of nonpayment.  Lead counsel represented the class on a contingency fee basis.  The risk created by representing a party on a contingent fee basis "militates in favor of approval."  In re Cigna-Am. Specialty Health Admin. Fee Litig., No. 16-3967, 2019 WL 4082946, at *13 (E.D. Pa. Aug. 29, 2019) (citing In re Schering-Plough Corp. Enhance ERISA Litig., No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012)).  The significant risk of nonpayment counsels toward the granting of the fee award.

The sixth Gunter factor concerns the amount of time lead counsel devoted to this action.  Brown, LLC has worked 203.4 hours on this litigation. These efforts do not reach the level of efforts typically seen in cases where a high percentage of recovery has been approved.  Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 766 (E.D. Pa. 2016) (collecting cases).  However, lead counsel did assume the risk of nonpayment under the contingency agreement.  This factor is at best neutral towards the award of the attorneys' fees.

Finally, under the seventh <u>Gunter</u> factor, the court will compare this proposed award to awards in similar cases. In this Circuit, the percentage of the recovery awards in FLSA common fund cases ranges from roughly 20-45%. <u>Mabry v. Hildebrandt</u>, No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases); <u>see also</u> <u>Altnor v. Preferred Freezer Servs.</u>, Inc., 197 F. Supp. 3d 746, 766 (E.D. Pa. 2016). An award of approximately one-third of the settlement fund is therefore typical for lead counsel in similar settlements in this district. An attorneys' fee of 33% of the settlement here is fair and reasonable.[3]

The award of attorneys' fees requested will be approved.

---

[3] If the court does not reach a conclusion upon consideration of the <u>Gunter</u> factors, it may conduct a lodestar cross-check. <u>Cendant</u>, 264 F.3d at 284-85. The court out of an abundance of caution has done so. <u>See</u> <u>Cendant</u>. The lodestar is the number of hours class counsel worked multiplied by the reasonably hourly billing rate for the services rendered. <u>In re AT&T Corp.</u>, 455 F.3d at 164.

Class counsel expended a total of 203.04 hours litigating this matter, which the court finds reasonable. The court also finds its hourly rates, which range from $850 to $415 based on years of legal experience, to be reasonable in this market. Administrative assistants had an hourly rate of $240, which the court also finds reasonable. Multiplying the individual's hourly rate by their hours worked, class counsel's total lodestar is $78.913.50. The lodestar cross-check does not undermine the requested fee award.

VII

Plaintiff also seeks an award to lead counsel and the claims administrator to reimburse them for litigation expenses. Rule 23 permits parties to seek nontaxable costs after certification of a class upon the agreement of parties.  See Fed. R. Civ. P. 23(h).  In the settlement agreement, the parties agreed that "Class Counsel may recover up to $6,000 in costs, in addition to attorneys' fees."  Settlement Agreement at § III.D.

Requesting litigation expenses is standard practice. See McDonough v. Toys R Us, Inc., 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015).  As stated in Lachance v. Harrington, "there is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of his reasonable litigation expenses from that fund."  965 F. Supp. 630, 651 (E.D. Pa. 1997).

Counsel incurred a total of $5,291.60 in expenses. The bulk of those expenses reflect the net cost of mediation ($4,412.50).  Lead counsel submitted an affidavit demonstrating support for the costs requested.  Such expenses were reasonable and their payment will be approved.

Plaintiff also requests approval of $19,000 in settlement administration costs.  The costs included preparing, printing, and mailing the Court-approved notices, conducting

address verification and skip tracing, re-mailing notices where necessary, and processing claim forms.  Lead counsel submitted an affidavit demonstrating support for the administration expenses requested.  The court takes note that of the more than 800 class members, only 18 were undeliverable after skip tracing.  Accordingly, such expenses were reasonable and their payment will be approved.

## VIII

Finally, plaintiff seeks an award of $10,000 for the named plaintiff, Christopher Paraham.  Service awards are common in collective and class actions, especially in cases where a common fund has been created to benefit all members.  See In re Flonase Antitrust Litig., 291 F.R.D. 93, 106 (E.D. Pa. 2013); Altnor, 197 F. Supp. 3d at 769.

As stated in an affidavit by counsel, plaintiff meaningfully advanced the litigation by supplying counsel with information and documents that facilitated their investigation and the drafting of the complaint, assisting in identifying and explaining relevant timekeeping and pay practices, and helping counsel evaluate defendant's payroll data for purposes of the damages analysis.

This award is on the high end of service awards approved in this district made to named plaintiffs in similar actions.  See, e.g., Hall v. Accolade, Inc., No. 17-3423, 2020

-25-

WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020).  However, no class
or collective member has objected.  In FLSA collective and class
actions where no one has objected, higher service awards have
been granted by this district.  See, e.g., In re Janney
Montgomery Scott LLC Fin. Consultant Litig., No. 06-3202, 2009
WL 2137224, at *12 (E.D. Pa. July 16, 2009); Hall v. Accolade,
Inc., No. 17-3423, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25,
2020).  The court will approve the payment of $10,000 to
Christopher Paraham.

IX

        For the foregoing reasons, the court will certify the
FLSA collective and the state law class and finds the terms of
the settlement to be fair and reasonable.  The court will
approve the settlement in its entirety and will enter an order
to this effect.